Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
mls@classlawgroup.com
jjb@classlawgroup.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE KOPFMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STUBHUB, INC.,<br><br>Defendant. | Case No. 3:20-cv-3025<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Conversion<br>2. Breach of Contract<br>3. Violation of California's Consumer Legal Remedies Act<br>4. Violation of California's Unfair Competition Law<br>5. Money Had and Received |

CLASS ACTION COMPLAINT

**INTRODUCTION**

1. As the COVID-19 pandemic took root in the United States in March 2020, tens of thousands fell sick, unemployment filings hit record highs, and the Dow Jones lost over a third of its value, leaving many in dire financial straits.

2. To prevent the spread of disease, thousands of sporting events, concerts, and other live performances were canceled and most of the country took shelter in their homes. The prompt cancellation of events should have meant that ticketholders were promptly refunded their money—money that in many cases was desperately needed.

3. But that did not happen for consumers who bought their tickets on the "world's largest ticket marketplace." Instead, a $4 billion corporation decided that it needed the money more than its customers.

4. Defendant StubHub has achieved tremendous success over the past two decades thanks to its FanProtect Guarantee—a trademarked promise that guaranteed consumers they would be protected against the risks of buying from a ticket reseller. This highly publicized form of buyers' insurance was the primary reason StubHub was able to convert a dubious and largely underground market into more than $1 billion in annual revenue. Yet now that the time has come to pay out on that buyers' insurance, StubHub is in effect canceling the policy.

5. StubHub's FanProtect Guarantee both implicitly and explicitly promised that its customers would receive full refunds if their ticketed events were cancelled. But at a time when consumers are facing unprecedented health, unemployment, and financial crises, and can really use those refunds, StubHub decided to switch from giving customers full refunds to giving them coupons.

6. Worse yet, StubHub is proactively collecting money owed to customers and converting that money for its own use. When a consumer purchases tickets on StubHub, the bulk of the purchase price is paid to a third-party reseller. In the event of a cancellation, that money rightfully belongs to the ticket buyer. Stubhub is charging

third-party resellers' credit cards for the money owed to its customers; but instead of honoring its guarantee and refunding this money to its customers, StubHub is keeping the money.

7. Plaintiff Michelle Kopfmann is one of the many consumers stuck with worthless tickets to a cancelled event and unable to obtain a refund. On behalf of herself and thousands like her, she seeks an order requiring StubHub to promptly refund customers all money paid for tickets to cancelled events, including service and delivery fees. Plaintiff also seeks an award of damages to compensate StubHub's customers for the loss of use of their money during a time when cash is at a premium and many families are struggling to get by. Finally, Plaintiff requests an award of punitive damages suitable to deter billion-dollar corporations like StubHub from exploiting the fog of a global crisis to enrich themselves at the expense of their customers.

**JURISDICTION AND VENUE**

8. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant StubHub.

9. Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendant StubHub resides in this district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**INTRADISTRICT ASSIGNMENT**

10. Assignment to the Oakland Division or the San Francisco Division would be proper because StubHub is headquartered in San Francisco, California, and a substantial part of the events or omissions which give rise to the claims alleged herein occurred there.

## PARTIES

11. Plaintiff Michelle Kopfmann is a citizen and resident of Phoenix, Arizona.

12. Defendant Stubhub, Inc. is a Delaware corporation headquartered in San Francisco, California.

## FACTUAL ALLEGATIONS

### The StubHub Ticket Exchange

13. StubHub operates a highly successful online platform for secondary ticket sales. It acts as a high-tech middleman between those who want to resell their tickets to sporting events, concerts, or other live entertainment (often at a substantial markup over face value), and those interested in buying.

14. As StubHub puts it, "As a marketplace, we do not own any of the tickets listed on our site. When buyers place an order for tickets on our site, they are purchasing from a third party individual seller."

15. Consumers can visit StubHub's website or use one of StubHub's mobile apps to find tickets available for purchase and see how much a reseller is asking for those tickets. To buy tickets, consumers pay StubHub the price set by the reseller as well as additional fees that StubHub charges for using its online platform. StubHub then delivers the ticket to the buyer and pays the reseller. StubHub keeps the service and delivery fees paid by the buyer as well as a commission it takes from the reseller's proceeds.

16. In 2019 alone, StubHub made over $1 billion in fees and commissions. The company bills itself as the world's largest ticket marketplace and was recently purchased for $4.05 billion.

### StubHub's FanProtect Guarantee

17. When StubHub was founded in 2000, the resale market for live entertainment still suffered from a shady reputation. Consumers who could not secure tickets directly from the issuer often had little choice but to take their chances dealing

1    with a stranger.  If something went wrong, buyers usually had no way to get their
2    money back.
3           18.     StubHub has turned a shadowy market into a multi-billion-dollar
4    enterprise by reversing decades of consumer unease and convincing consumers they
5    could trust secondhand tickets purchased through the StubHub platform.
6           19.     StubHub accomplished this through its trademarked "FanProtect
7    Guarantee."
8           20.     As one of StubHub's co-founders put it, "The guarantee was in many
9    ways the nucleus of the value proposition that we were offering."  "People were
10   skeptical about buying tickets. We were trying to be the solution and the safe
11   alternative."
12          21.     The FanProtect Guarantee is just what it sounds like: "FanProtect™ means
13   every order is 100% guaranteed."  "Because 99% guaranteed just sounds sketchy."
14   https://www.stubhub.com/promise/
15          22.     StubHub engaged in a years-long marketing campaign designed to ensure
16   that sports fans, concertgoers, and other potential customers knew about the FanProtect
17   Guarantee.  As StubHub's Chief Marketing Officer put it, "it came down to being able
18   to name it the FanProtect Guarantee, and to reinforcing and reinforcing and reinforcing
19   that StubHub, like any best-in-class e-commerce company, was going to stand behind
20   the product that we're selling."
21          23.     Among the things that the FanProtect Guarantee protects against is the
22   risk that the ticketed event is cancelled.  Buyers don't have to worry about tracking
23   down the reseller to get their money back.  The FanProtect Guarantee means StubHub
24   will stand behind its product and guarantee buyers that they will receive their money
25   back.
26          24.     StubHub has confirmed this interpretation of the FanProtect Guarantee on
27   numerous occasions.  When it filed its trademark application in 2011, StubHub included
28

as its trademark specimen marketing material that features the question, "What does Fan*Protect*™ mean for Buyers?"  Among the examples it gave of how the FanProtect Guarantee protects buyers, was "You will be refunded if the event is cancelled and not rescheduled."

25. Other examples appear in StubHub commercials still available on YouTube.  One commercial, entitled "Diva Behavior," uses the tagline "If they don't play, you don't pay."  In the caption describing the commercial, StubHub writes, "When it comes to live music, a lot can happen behind the scenes.  And sometimes, a show gets cancelled.  But if the band doesn't play you won't pay—thanks to StubHub's FanProtect guarantee."  YouTube reports over 12 million views for that commercial alone.  https://www.youtube.com/watch?v=YGE8an5zojc.

26. Another commercial, entitled "Merch Tent," features the voiceover, "Game cancelled?  We got you covered with FanProtect."  In its description of the commercial, StubHub writes, "Show cancelled due to weather? How about thunder, lightning, and an incoming hurricane? StubHub's FanProtect guarantees you a refund, no matter what."  https://www.youtube.com/watch?v=svJU6Z7JoAs.

27. Another example appears on Major League Baseball's website, which informs prospective ticket purchasers that "StubHub is the Official Fan to Fan Ticket Marketplace of MLB.com," and includes information from StubHub about its FanProtect Guarantee.  Stubhub confirms that the FanProtect Guarantee means, in part, "You'll get a refund if your event is cancelled and not rescheduled."

28. Similar language was long included on StubHub's website as well.  References to the FanProtect Guarantee linked to a page entitled "The StubHub Promise," which stated in large teal letters that "FanProtect™ means every order is 100% guaranteed."  Until the recent events that gave rise to this lawsuit, the webpage confirmed that StubHub would refund buyers in the event of cancellation.

**StubHub's Response to the COVID-19 Pandemic**

29. As COVID-19 began spreading around the globe, and StubHub's customers started to express concern that their events might be cancelled, StubHub's President sent an email to its customers "regarding the current Coronavirus situation." The email re-assured customers that "StubHub is here for you," and that in the event of cancellations, buyers could "receive a full refund for the original order amount (including service and delivery fees)." Alternatively, buyers could opt to receive a coupon for a future event worth 120% of their original order.

30. Only a few weeks later, on or about March 27, 2020, StubHub decided to breach its core guarantee and not give refunds for cancelled events after all. It posted a "Coronavirus update" on its webpage that stated it would only be giving coupons to buyers when events were cancelled.

31. StubHub's "Coronavirus update" also stated that when an event is cancelled, StubHub would charge resellers' credit cards to recoup the amounts that the buyers paid them for tickets to the cancelled event. In other words, StubHub is now in possession of money it collected from resellers for tickets to now-cancelled events— money that rightfully belongs to buyers—but has decided to convert those funds for its own use.

**PLAINTIFF'S EXPERIENCE**

32. Plaintiff Michelle Kopfmann has used StubHub's online platform to purchase tickets to more than a half dozen events over the past five years.

33. Most recently, on or about January 18, 2020, Ms. Kopfmann purchased six tickets to a Spring Training baseball game between the Cincinnati Reds and Chicago Cubs. She bought the tickets from a third-party reseller using StubHub's iPhone mobile app. The total cost of her purchase, including service and delivery fees, amounted to $613.54. The game was scheduled to be played on March 19 at Sloan Field, the Cubs' Spring Training facility located in Mesa, Arizona.

34. On March 12, Major League Baseball announced the cancellation of all remaining Spring Training games for the 2020 season due to the burgeoning COVID-19 pandemic.

35. Around the same time, Ms. Kopfmann received the "StubHub is here for you" email from StubHub's President, which confirmed she could "choose to receive a full refund for the original order amount (including service and delivery fees) to the original payment method."

36. Ms. Kopfmann called StubHub's customer service on or about March 19 to request a refund of the $613.54 she spent on the Spring Training tickets. She was assured that she would soon receive her money back.

37. The next week, StubHub decided to stop providing refunds to customers like Ms. Kopfmann who purchased tickets to cancelled events. Under the new rules, Ms. Kopfmann will never receive her refund, and is only entitled to a time-limited coupon valid only on StubHub's platform.

## CLASS ALLEGATIONS

38. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to pursue her claims on behalf of a class of similarly situated persons. The parameters of the class may be refined through discovery and will be subject to Court approval and modification, but for purposes of this complaint, Plaintiff proposes the following class definition:

> All persons residing in the United States who purchased tickets on the StubHub ticket marketplace for events that were cancelled on or after March 1, 2020, and who did not receive a full refund within 10 days of the cancellation.
>
> Excluded from the class are StubHub, Inc., and its officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, parent companies and assigns. Also excluded from the class are any judicial officers and associated court staff assigned to this case and their immediate family members.

39. The proposed class meets each of the requirements for class certification

pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3).

40. <u>Numerosity</u>:   The class is sufficiently numerous such that individual joinders are impracticable.  According to StubHub's President, more than 20,000 events listed on StubHub had been cancelled as of April 1, 2020, meaning that the class likely numbers in the hundreds of thousands if not millions.

41. <u>Commonality & Predominance</u>:  Common questions of law and fact that exist within the proposed class and are likely to predominate over any individualized issues include:

   a. Whether class members have an ownership interest in money they paid third-party resellers for tickets to subsequently cancelled events;

   b. Whether StubHub converted those funds for its own use by charging the resellers' credit cards and failing to turn over the proceeds to class members;

   c. Whether StubHub converted those funds with willful, wanton, or reckless disregard for the rights, health, and safety of its customers, such that punitive damages are warranted;

   d. Whether StubHub's FanProtect Guarantee or any of the representations made in connection with the FanProtect Guarantee constitute a binding promise to provide refunds in the event of a cancellation;

   e. Whether an objectively reasonable consumer would believe that the FanProtect Guarantee or any of the representations made in connection with the FanProtect Guarantee meant that StubHub would provide refunds in the event of cancellations;

   f. Whether it was unfair for StubHub to switch from providing refunds for cancelled events to coupons in the middle of a global pandemic;

   g. Whether as a matter of equity and good conscience, StubHub should be required to return money paid by its customers for cancelled events.

42. <u>Typicality</u>:  Plaintiff's claims are typical of those asserted by the proposed class, as Plaintiff and class members were similarly affected by StubHub's decision to stop providing refunds for cancelled events and each seeks to recover a full refund and associated damages.

43. <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the proposed class.  Plaintiff's interests do not conflict with the class's interests, as both seek to recover refunds for cancelled events from StubHub, and Plaintiff has retained counsel experienced in complex class litigation to represent class members' interests.

44. <u>Superiority</u>:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  StubHub has taken money that rightfully belongs to hundreds of thousands of consumers, and only through collective action can that wrong be fully remedied.

45. <u>Injunctive Relief</u>:  StubHub's decision to switch from providing refunds for cancelled events to coupons in the middle of a global pandemic was an action that applied generally to the entire class, such that final injunctive relief or corresponding declaratory relief would be appropriate respecting the class as a whole.

## CHOICE OF LAW ALLEGATIONS

46. The State of California has sufficient contacts to class members' claims such that uniform application of California law to those claims is appropriate.

47. StubHub has been headquartered in San Francisco, California, since its founding in 2000, StubHub does substantial business in California, a sizable percentage of the class is located in California, and all the core decisions that gave rise to class members' claims were made from California.

48. StubHub's FanProtect Guarantee was developed in California, as was the prolonged marketing that created pervasive awareness of the FanProtect Guarantee among consumers.

49. Likewise, the decision to switch from providing refunds for cancelled

events to coupons in the midst of a global pandemic was made by StubHub's President, who is based at StubHub's headquarters in San Francisco, California, as was the related decision to charge third-party resellers' credit cards for money owed to StubHub's customers.

50. StubHub also includes a California choice-of-law provision in its StubHub Marketplace Global User Agreement. Although Plaintiff and the proposed class did not have proper notice of and did not agree to that Global User Agreement, it reflects StubHub's acquiescence to the application of California law and expectation that California law will apply to claims brought by its customers.

51. The State of California also has a strong regulatory interest in applying its law to all class members' claims. California's consumer protection law, in particular, is designed to preserve a business climate in California free of unfair and deceptive practices. If California were only able to address unfair business conduct when the injured consumer resides in California, that consumer protection law would be largely ineffective at regulating companies who do business in all fifty states. Violators would be able to keep the vast majority of their ill-gotten gains (all those obtained from non-California consumers), leaving California-based companies like StubHub undeterred from engaging in similar conduct in the future

### FIRST CAUSE OF ACTION
**Conversion**

52. Plaintiff alleges this cause of action on behalf of herself and the proposed class, and in so doing, incorporates all preceding and ensuing factual allegations.

53. Plaintiff and class members purchased tickets from third-party resellers, with StubHub acting as the intermediary for those purchases. StubHub has publicly confirmed that it is not the seller for purchases made through its website or mobile apps, including by repeatedly stating: "We do not own any of the tickets listed on our site. When buyers place an order for tickets on our site, they are purchasing from a

1 third party individual seller."

2     54.    The events for which Plaintiff and class members purchased tickets were canceled. When an event is cancelled, the original ticket vendor has an obligation to repay the original purchaser. Likewise, if the tickets were resold, as they were here, the reseller has an obligation to repay the secondary purchaser. Accordingly, class members were legally and equitably entitled to the funds they paid third-party resellers for their tickets.

    55.    Defendant StubHub is in possession of the refunds to which Plaintiff and class members are entitled. As StubHub stated in its "Coronavirus update," it is charging the credit cards of third-party resellers to recoup any proceeds it previously turned over to the resellers.

    56.    But rather than turn the refunds over to Plaintiff and class members, StubHub has converted them for its own use and is instead giving buyers a coupon that is valid only for future tickets purchased through StubHub, and only for a limited time.

    57.    Plaintiff and class members did not consent to StubHub's taking possession of the money owed to them by the third-party resellers and did not consent to StubHub's conversion of that money for its own use.

    58.    As a result of StubHub's conversion of the money owed them by third-party resellers, Plaintiff and class members have lost the use of their money during a worldwide public-health and economic crisis and have suffered damages in an amount according to proof.

    59.    Plaintiff and class members seek an award of compensatory and punitive damages against StubHub, whose conduct evidences a willful, wanton, and reckless disregard for the rights, health, and safety of Plaintiff and class members.

## SECOND CAUSE OF ACTION
**Breach of Contract**

    60.    Plaintiff alleges this cause of action on behalf of herself and the proposed

1 class, and in so doing, incorporates all preceding and ensuing factual allegations.

2  61. StubHub offered to insure consumers against the risks of buying from a ticket reseller, including the risk that the ticketed event would be cancelled, if they purchased those tickets through StubHub's website or mobile apps. StubHub conveyed this offer through its heavily marketed and trademarked FanProtect Guarantee, as discussed above.

62. Plaintiff and class members accepted StubHub's offer by purchasing tickets through its website or mobile apps, and paid StubHub service and delivery fees in connection with that purchase.

63. StubHub breached its FanProtect Guarantee by not making Plaintiff and class members whole after their events were cancelled and they were left with worthless tickets. StubHub has not refunded Plaintiff and class members the money they paid for the tickets or the service and delivery fees they paid to StubHub.

64. As a result of StubHub's failure to fully protect and guarantee Plaintiff and class members' purchases as promised, Plaintiff and class members have suffered damages according to proof, including loss of the use of the money they spent for the tickets.

**THIRD CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**

65. Plaintiff alleges this cause of action on behalf of herself and the proposed class, and in so doing, incorporates all preceding and ensuing factual allegations.

66. Plaintiff and class members paid for StubHub's services in connection with their purchase of tickets to entertainment events.

67. Defendant StubHub has violated and continues to violate California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1770(a)(5), (7), (9), (14), and (16), by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with its marketing and sale of ticket services.

68. StubHub represented that ticket purchases made on its website and mobile apps were protected against the risks of buying from a ticket reseller, including the risk that the ticketed event would be cancelled. StubHub made this representation through heavy marketing and widespread dissemination of its trademarked "FanProtect Guarantee."

69. In marketing its FanProtect Guarantee, StubHub both implicitly and explicitly represented that if an event were cancelled, StubHub would refund consumers the money they paid to buy tickets for that event on StubHub's platform, including service and delivery fees. Yet StubHub has not refunded Plaintiff and class members the money they paid to purchase tickets on StubHub's platform and has announced that it will be providing customers with coupons in lieu of refunds.

70. As a result of StubHub's violations of the CLRA, Plaintiff and class members have suffered damages. Plaintiff and class members would not have purchased tickets through StubHub were it not for the FanProtect Guarantee. They reasonably believed that StubHub would refund their money in the event of a cancellation, and because StubHub is not making good on its marketing, Plaintiff and class members have lost much-needed money at a time of great economic uncertainty.

71. Plaintiff seeks an order enjoining StubHub from marketing its FanProtect Guarantee without simultaneously disclosing with equal prominence that the FanProtect Guarantee is not a total guarantee and that it no longer protects buyers from losing money in the event of a cancellation. In addition, Plaintiff will request that the Court order a corrective marketing campaign. StubHub has heavily marketed the FanProtect Guarantee to consumers for well over a decade and continues to market the FanProtect Guarantee to this day, including through the channels and in the manner previously alleged.

72. Without suitable injunctive relief, that marketing will continue to deceive consumers, who have been trained by StubHub's marketing to believe that purchases

13
CLASS ACTION COMPLAINT

on StubHub are fully protected and guaranteed. In addition, Plaintiff and many class members would consider purchasing tickets on StubHub after the COVID-19 pandemic subsides, and without the benefit of injunctive relief, they will not be able to rely on StubHub's representations at that time.

73. Pursuant to California Civil Code section 1782, Plaintiff will serve StubHub with a notice and demand for correction, and intends to amend this cause of action to seek damages if StubHub does not timely remedy its ongoing CLRA violations.

**FOURTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**

74. Plaintiff alleges this cause of action on behalf of herself and the proposed class, and in so doing, incorporates all preceding and ensuing factual allegations.

75. StubHub has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., which prohibits unlawful, fraudulent, and unfair business acts and practices.

76. <u>Unlawful Practices</u>: StubHub engaged in unlawful business practices when it violated the California Consumers Legal Remedies Act, converted refunds owed to Plaintiff and class members for its own use, and breached its FanProtect Guarantee to consumers, as alleged in the preceding causes of action.

77. <u>Fraudulent Practices</u>: StubHub engaged in fraudulent business practices by marketing its services and FanProtect Guarantee in a manner likely to deceive a reasonable consumer.

78. As previously alleged, StubHub's years-long marketing of its FanProtect Guarantee conveyed to consumers that ticket purchases made through StubHub were protected against the risks of buying from a ticket reseller.

79. StubHub's FanProtect Guarantee marketing both implicitly and explicitly represented to consumers that if an event were cancelled, StubHub would refund

consumers the money they paid to buy tickets for that event on StubHub's platform, including service and delivery fees.

80. Yet StubHub has not refunded Plaintiff and class members the money they paid to purchase tickets on StubHub's platform and has announced that it will be providing customers with coupons in lieu of refunds.

81. <u>Unfair Practices</u>:  StubHub engaged in unfair business practices by reneging on its long-standing FanProtect Guarantee and substituting coupons for refunds at a time when the FanProtect Guarantee is most needed.

82. StubHub's practice of providing coupons instead of refunds is unethical, unscrupulous, oppressive, and substantially injurious to consumers; any legitimate utility of the practice is outweighed by the harm to consumers; and the practice violates California's strong consumer-protection policy, as reflected in statutes such as the Consumers Legal Remedies Act.

83. As a result of StubHub's business practices, Plaintiff and class members suffered injury in fact and lost money—namely, the money they paid for tickets and service fees, which StubHub has failed to return to them.

84. Pursuant to California Business and Professions Code section 17203, Plaintiff and class members seek such orders or judgments as may be necessary to prevent StubHub from continuing to engage in unfair competition, including by issuing injunctive relief similar to that sought for violation of the CLRA.

85. Plaintiff and class members also seek restitution of all money that StubHub may have acquired by means of its unfair competition.

### FIFTH CAUSE OF ACTION
**Money Had and Received**

86. Plaintiff alleges this cause of action on behalf of herself and the proposed class, and in so doing, incorporates all preceding and ensuing factual allegations.

87. As an alternative to the Second Cause of Action for breach of contract, and

15

CLASS ACTION COMPLAINT

without intending to make an election of remedies, Plaintiff and class members seek restitution from StubHub for money had and received.

88. StubHub received money from Plaintiff and class members that was intended to be used for their benefit.

89. StubHub did not use the money received from Plaintiff and class members for their benefit and has not returned the money to them. As a matter of equity and good conscience, that money should be returned to Plaintiff and the proposed class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the proposed class, respectfully requests the following relief:

A. A determination this action may be maintained as a class action;

B. An award of damages and restitution to be paid according to proof, including statutory damages and punitive damages where appropriate;

C. Appropriate injunctive and equitable relief sufficient to correct the consumer deception caused by StubHub's actions and prevent it from continuing to capitalize on its unfair acts and practices;

D. Pre-judgment interest and post-judgment interest, as provided by law;

E. Attorneys' fees and expenses, including expert fees and costs;

F. Any and all other legal and equitable relief that the Court may find appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial for all claims so triable.

May 1, 2020                           Respectfully submitted,

                                      By:  /s/ *Michael L. Schrag*

                                      Michael L. Schrag (SBN 185832)
                                      Joshua J. Bloomfield (SBN 212172)
                                      **GIBBS LAW GROUP LLP**

505 14th Street, Suite 1110
Oakland, California 94612
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
mls@classlawgroup.com
jjb@classlawgroup.com

*Counsel for Plaintiff and the Proposed Classand the Proposed Class*

CLASS ACTION COMPLAINT